IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOSHUA W. PHELPS, | ) | |
| | ) | Civil Action No. 7:20cv00207 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| C. BAILEY, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendants. | ) | |

Plaintiff Joshua W. Phelps, a prisoner proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, against two investigators at Pocahontas State Correctional Center ("Pocahontas"), C. Bailey and S. Johnson ("Defendants"), alleging violation of his constitutional rights. This matter is before the court on Defendants' motion for summary judgment. After reviewing the record, the court concludes that Phelps failed to exhaust his available administrative remedies before filing this action and, therefore, the court will grant Defendants' motion for summary judgment.

I.

In his complaint, Phelps alleges that Defendants "unveiled confidential and privileged information that put [him] in a life[-]threatening environment." Specifically, Phelps states Defendants told "white supremist gang[]s" that Phelps was a confidential informant. Phelps claims "[t]he gang members put a [kill-on-sight] hit on [him] . . . in all of the [Virginia] prison system." At the time this occurred, Phelps was housed at Pocahontas. Phelps alleges that, "[d]ue to the constant threat of [to his] [h]ealth and safety, [he] was detained in the restrictive housing unit" and subsequently transferred to Keen Mountain Correctional Center ("Keen

Mountain"), where he was placed in restrictive housing and enrolled in the "S.T.A.R. [P]rogram."[1] Eventually, staff tried to remove Phelps from the restrictive housing assignment and place him into general population at Keen Mountain, but he "refused" to go there.

Phelps alleges that other inmates who were housed in general population "threatened him" and that "staff officials refused and neglected to help" him. As a result of this, Phelps claims he was "forced to write a letter to []Major Kelly that if [he] was released then [he] would stab someone" so that he could "stay in restrictive housing for [his] protection." Phelps alleges he was charged with "severe" disciplinary offenses after "creat[ing] charges" to stay in solitary confinement for his "own safety and protection." As relief, Phelps asked the court to transfer him to North Carolina "for [his] safety and health."[2]

After filing this action in March 2020 while he was housed at Keen Mountain, Phelps was transferred to Red Onion State Prison on July 29. On August 12, the court held a telephonic conference with the parties and addressed Phelps's safety and housing status at that time. (*See* ECF No. 23.) By order entered August 14, 2020, the court concluded that Phelps was not in imminent danger of irreparable harm. (*See* ECF No. 24.) On August 17, 2020,

---

[1] The S.T.A.R. Program is a special restrictive housing unit. According to information available on the Virginia Department of Corrections' public website, the S.T.A.R. Program is designed for offenders who do not exhibit behavior or assaultive problems but refuse to enter general population. The program teaches skills to safely enter the general population environment and includes four separate 'steps' to re-entry. The goal of the program is to transition the offender to general population. *STAR Program*, VA. DEP'T. OF CORR., https://vadoc.virginia.gov/offender-resources/incoming-offenders/facility-programs/cognitive/star-program/ (last visited Mar. 8, 2021).

[2] Phelps also filed a motion requesting "relief for [his] long[-]term solitary confinement due to this case." (*See* ECF No. 30.) In the motion, Phelps states that due to being housed in solitary confinement, he has suffered stress and depression. Phelps requests placement "at a safe facility where he can have all the privile[]ges as general population [inmates] and [where he can] attend programs to better himself." He also requests $100,000 for the mental stress he has endured. To the extent Phelps seeks to amend his complaint through this motion, the court will deny the motion as moot because the court is granting Defendants' motion for summary judgment based on Phelps's failure to exhaust his available administrative remedies before filing this action.

Phelps was transferred to a correctional facility in South Carolina, operated by the South Carolina Department of Corrections. Defendants filed a motion for summary judgment on August 25. (ECF No. 27.)

## II.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has

proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

### A.

Defendants assert they are entitled to summary judgment because Phelps failed to exhaust his available administrative remedies prior to filing suit, as is required by 42 U.S.C. § 1997e(a). The court agrees and will grant Defendants' motion for summary judgment.

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. *Nussle v. Porter*, 534 U.S. 516, 524 (2002) (interpreting 42 U.S.C. § 1997e(a)). The exhaustion requirement of § 1997e(a) applies to "all inmate suits" regardless of if the form of relief sought is available through exhaustion of administrative remedies. *Id.* An inmate must follow all steps of the established administrative procedure that the state provides to prisoners and meet all deadlines of that procedure before filing a § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006). An inmate's failure to follow the required procedures of the prison's administrative remedy process—including time limits—or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Id.* at 90.

But the court is also "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*,

478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "The benefits of proper exhaustion are only realized if the prison grievance system is given a fair opportunity to consider the grievance which will not occur unless the grievant complies with the system's critical procedural rules." *Miles v. Taylor*, No. 1:16CV602 (LMB/JFA), 2016 WL 8261717, at *1 (E.D. Va. July 5, 2016) (internal quotations omitted) (citing *Woodford*, 548 U.S. at 95), *aff'd* 670 F. App'x 79 (4th Cir. 2016).

**B.**

In support of Defendants' motion for summary judgment, Human Rights Advocate C. Smalling, Grievance Coordinator K. Breeding, and Interstate Compact Coordinator for the Virginia Department of Corrections ("VDOC") K. Rosch each provided affidavits. These affidavits are accompanied by the VDOC's Offender Grievance Procedure, Operating Procedure ("OP") 866.1, and Phelps's grievance records related to the claims in this action. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The grievance process provides VDOC staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve his complaint informally. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an

informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If prison officials do not provide a response within 15 days of the informal complaint being logged, the inmate may file a regular grievance and must attach the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and a receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days from the date it is received, along with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review.

## C.

Phelps filed informal complaints related to his safety at Pocahontas on May 20, 2019, May 23, 2019, March 13, 2020, and March 20, 2020.[3] Defendants assert that all of the informal complaints were responded to by officials within the required time, and that Phelps did not submit regular grievances following these informal complaints. Phelps does not allege that he was prevented from filing regular grievances after these informal grievances. The sole complaint which Phelps eventually would exhaust was not filed until April 24, 2020, more than a month after this suit was initiated.[4]

Phelps failed to exhaust his administrative remedies prior to filing this suit and alleges no facts to dispute or overcome this. A prisoner cannot bring a civil action unless he has first exhausted available administrative remedies. *Nussle v. Porter*, 534 U.S. 516, 524 (2002) (interpreting 42 U.S.C. § 1997e(a)). The "mandatory language [of the PLRA] means a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Miller*

---

[3] Informal complaints fulfill the exhaustion requirement under the narrow circumstance when they are "the only administrative remedy available." *Carr v. Hazelwood*, No. CIV.A.7:07CV00001, 2008 WL 4556607, at *6 (W.D. Va. Oct. 8, 2008), report and recommendation adopted, No. 7:07CV00001, 2008 WL 4831710 (W.D. Va. Nov. 3, 2008). When formal remedies are available, a plaintiff is "required to grieve formally if he wishe[s] to later maintain a suit." *Graham v. Cty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 741 (E.D. Va. 2009); *see Graham v. Gentry*, 413 F. App'x 660 (4th Cir. 2011). Phelps's informal complaints were not his only available administrative remedy and, therefore, do not fulfill his exhaustion obligation.

[4] Phelps submitted the informal complaint on April 24, 2020. Defendants' records indicate they responded within the required time and that Phelps submitted a regular grievance on May 5, 2020. The Warden provided the Level I response determining that Phelps's grievance was unfounded on May 19, 2020. Phelps appealed the Level I response to Level II. The Regional Administrator provided a Level II response on June 17, 2020, determining that Phelps' grievance was unfounded. Level II is the final level of review for most issues and for those issues exhausts all administrative remedies. Phelps's administrative relief for this complaint was exhausted on June 17, 2020, more than three months after he filed this action.

*v. French*, 530 U.S. 327, 337 (2000)). Finding no genuine dispute of material fact on this point, the court concludes that Defendants are entitled to summary judgment.[5]

## IV.

For the reasons discussed, the court will grant the defendants' motion for summary judgment.

The Clerk shall send a copy of this memorandum opinion and accompanying order to the parties.

**ENTERED** this 29th day of March, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[5] Moreover, to the extent Phelps seeks injunctive relief in his complaint, his transfer to a South Carolina facility renders this request moot. The transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (holding that a prisoner's transfer rendered his claims for injunctive and declaratory relief moot); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that transfer of a prisoner rendered his claim for injunctive relief moot); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (holding that transfer made claim for injunctive relief moot); *Ross v. Reed*, 719 F.2d 689, 693 (4th Cir. 1983); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). In his complaint, Phelps asked the court to transfer him out-of-state for his safety. Because Phelps has now been transferred out-of-state, his request for transfer is now moot. *See Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007) (finding that once an inmate is removed from the conditions of which they complain, the inmate "no longer has a legally cognizable interest in a judicial decision on the merits of his claim.")